Garrett S. Ledgerwood, OSB No. 143701
garrett.ledgerwood@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Fax: 503.224.0155

Attorney for Creditors Solomon Management, Inc.
and Robert D. Solomon, in his capacity as Trustee of
the Mervin Solomon GST Trust UW 9-28-2008

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>EDWARD A. ARINIELLO, JR.,<br><br>Debtor. | Case No. 21-31142-dwh11<br><br>Chapter 11<br><br>**JOINT OBJECTION OF SOLOMON MANAGEMENT, INC. AND ROBERT D. SOLOMON TO CONFIRMATION OF DEBTOR'S SUBCHAPTER V PLAN** |

Solomon Management, Inc. ("***Solomon Management***") and Robert D. Solomon, in his capacity as Trustee of the Mervin Solomon GST Trust UW 9-29-2008 ("***Solomon***"), object to confirmation of Edward A. Ariniello, Jr.'s (the "***Debtor***") Plan of Reorganization dated August 17, 2021 (Dkt. No. 30, the "***Plan***"). In support of this Objection, Solomon Management and Mr. Solomon allege and state as follows:

Page 1 of 13   Objection of Solomon Management and Robert Solomon to Confirmation of Plan

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22

**BACKGROUND**

On or about June 1, 2017, U.S. Outdoor Holding LLC, an Oregon limited liability company ("**U.S. Outdoor**"), and Solomon Management entered into an agreement for the purchase by U.S. Outdoor of certain assets of Solomon Management (as amended, the "**Asset Purchase Agreement**"). In partial consideration for the asset purchase under the Asset Purchase Agreement, U.S. Outdoor executed and delivered to Solomon Management a promissory note in the initial principal amount of $1,909,384.00 (the "**Promissory Note**"). The Debtor guaranteed all obligations of U.S. Outdoor under the Asset Purchase Agreement and the Promissory Note pursuant to that certain Carve-Out Guarantee executed and delivered by the Debtor concurrent with the Asset Purchase Agreement and the Promissory Note (the "**APA Guarantee**").

U.S. Outdoor defaulted under the Asset Purchase Agreement and Promissory Note by failing to pay the quarterly installments due on May 31, 2020 and August 31, 2020. On September 4, 2020, following the defaults, U.S. Outdoor filed a voluntary petition for relief in this Court under chapter 11 of the U.S. Bankruptcy Code, Case No. 20-32571-dwh11 (the "**U.S. Outdoor Bankruptcy Case**"). The filing of the U.S. Outdoor Bankruptcy Case triggered the Debtor's liability under the APA Guarantee.

In connection with the Asset Purchase Agreement, U.S. Outdoor and Mr. Solomon entered that certain Commercial Lease (the "**Lease**") dated June 1, 2017, for the real property commonly known as 219 SW Broadway, Portland, Oregon, where U.S. Outdoor conducted its operations (the "**Property**"). In connection with the Lease, the Debtor executed and delivered to Mr. Solomon that certain Guaranty, pursuant to which the Debtor unconditionally guaranteed all obligations of U.S. Outdoor under the Lease (the "**Lease Guarantee**").

U.S. Outdoor defaulted under the Lease by failing to pay the monthly rent for July 2020 and each month thereafter, commencing the U.S. Outdoor Bankruptcy Case, rejecting the Lease in its bankruptcy case, abandoning the Property, failing to maintain the condition of the

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22

Property, failing to pay the taxes and insurance costs at the Property, and removal of Mr. Solomon's fixtures at the Property.

On October 19, 2020, following the filing of the U.S. Outdoor Bankruptcy Case, Solomon Management and Mr. Solomon each sent demand letters to the Debtor, demanding payment under both the APA Guarantee and the Lease Guarantee. The demand letters were also emailed to the Debtor's counsel in this proceeding. After the Debtor failed to make payment on the APA Guarantee and the Lease Guarantee, on November 4, 2020, Solomon Management and Mr. Solomon commenced lawsuits against the Debtor in the Circuit Court for the State of Oregon for Clackamas County to collect on the guarantees, Case No. 20CV38808 and Case No. 20CV38815 (the "**Guarantee Lawsuits**"). Service in the Guarantee Lawsuits was effected upon the Debtor by substitute service upon his wife on November 12, 2020.

On November 17, 2020, after the transmittal of the demand letters and after the commencement and service of the Guarantee Lawsuits, the Debtor conveyed his entire interest in his principal residence known as 29455 SW Heater Road, Sherwood, Oregon 97140 (the "**Residence**") into the name of his wife, Carrie M. Lattimer-Ariniello, for no consideration and while the Debtor was insolvent. Concurrent with the transfer of the Residence, Mrs. Lattimer-Ariniello obtained a new loan in the principal amount of $510,400 from Finance of America Mortgage LLC ("**Finance of America**") secured by the Residence. When questioned at the meeting of creditors regarding the transfer, the Debtor testified that the Residence was transferred to his spouse because his "mortgage broker said there was just no way it would qualify" if the Debtor were still on title to the Residence and because his "debt to income was way too high." Title to the Residence still remains in the name of the Debtor's wife.

On May 17, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the United States Bankruptcy Code. On June 1, 2021, the Debtor filed his schedules (Dkt. No. 19, the "**Schedules**") and on August 17, 2021, the

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Debtor filed amended Schedules I & J (Dkt. No. 29). The Debtor's amended Schedules I & J show monthly net income of $262.33. Under Schedule I, the Debtor's monthly gross income is $5,999.50 against his spouse's income of $6,729.00. The income in the Debtor's Schedule I shows voluntary retirement contributions for the Debtor's spouse of $404 per month and domestic support obligations of $886.17 per month. The Debtor's Schedule J includes monthly transportation costs of $842, monthly parking costs of $370, monthly non-filing spouse savings of $300, and monthly payment on the Debtor's spouse's debt and credit card payments of $500. In the Schedules, the Debtor further (i) claims a homestead exemption of $40,000 in the Residence, based upon an "Equitable Interest" in the Residence and (ii) lists two undisputed claims for his wife in the amounts of (A) $125,000 for "Business Loan Guaranty – National Funding Debt" and (B) $195,000 for "Insider Loans". The Debtor schedules the value of his 68.4% ownership interest in U.S. Outdoor as "Unknown."

In connection with the confirmation of the plan in the U.S. Outdoor Bankruptcy Case, U.S. Outdoor obtained two new exit financing loans: (i) a convertible loan for $125,000 from Aaron Unverzagt and (ii) a convertible loan for $125,000 from Alecia Pollard (together the "**Convertible Loans**") (U.S. Outdoor Dkt. No. 134). The Convertible Loans are each convertible at the option of the lenders into an additional 3.2% of the equity in U.S. Outdoor (U.S. Outdoor Dkt. No. 46, Page 45; U.S. Outdoor Dkt No. 134 ¶7). The implicit value of U.S. Outdoor based on the conversion rate under the Convertible Loans is $3,906,250 ($125,000 / 3.2%). The value of the Debtor's fully-diluted equity interest in U.S. Outdoor based on the implicit value in the Convertible Loans is $2,421,875 ($3,906,250 x 62%).

Under his Plan, the Debtor proposes to pay $15,147.96 into the Plan over a period of 3 years plus any tax refunds. In the liquidation analysis attached to the Plan, the Debtor contends that, in a chapter 7 liquidation, Creditors would receive no distribution. In arriving at this figure, the Debtor (i) claims a homestead of $40,000, (ii) values his equity in U.S.

Page 4 of 13    Objection of Solomon Management and Robert Solomon to Confirmation of Plan

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22

Outdoor at $0, and (iii) deducts from the value of the Residence the new $510,000 loan obtained by the Debtor's spouse from Finance of America.

Concurrent with the filing of this Objection, Solomon Management and Mr. Solomon have submitted ballots rejecting the Plan and have filed an objection to the Debtor's claimed homestead exemption.

## OBJECTION

Solomon Management and Mr. Solomon object to confirmation of the Plan because (i) it is not feasible, (ii) it does not meet the best interest of creditors' test, (iii) it is not fair and equitable, and (iv) it is not proposed in good faith.

**The Plan is not feasible.**

As an initial matter the Plan may not be confirmed because, as proposed, it is not feasible. According to the Debtor's financial projections for the Plan (Dkt. No. 33), the Debtor has projected disposable income over the life of the Plan of $14,520. Under the Debtor's liquidation analysis, however, there are an estimated $25,000 in professional fees outstanding. Further, under the Debtor's monthly operating report for November 2021 (Dkt. No. 63), the Debtor only had cash on hand at the end of the month of $1,954.49 and, based on Debtor's Counsel's retention application (Dkt. No. 6), it does not appear that Debtor's counsel is holding any retainer. As a result, the only funds the Debtor has available to fund the deficiency in plan payments are anticipated tax refunds. The IRS, however, has filed a motion for relief from stay in the case (Dkt. Nos. 55 and 62) to offset the Debtor's pre-petition tax refunds. A preliminary hearing on the IRS's Motion for Relief is scheduled for January 10, 2022, after the confirmation hearing on the Plan. To the extent the IRS prevails on the Motion, the Plan appears administratively insolvent and, consequently, not feasible.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

**The Plan does not meet the best interest of creditors' test.**

Pursuant to Section 1129(a)(7)(A) of the Bankruptcy Code, made applicable to this proceeding by Section 1191(a) of the Bankruptcy Code, a plan may not be confirm as to a creditor that has not accepted a plan unless the creditor will receive under the plan an amount not less than the creditor would receive in a chapter 7 liquidation. Because the liquidation analysis in the Plan deducts $40,000 for the Debtor's homestead exemption, values the Debtor's equity interest in U.S. Outdoor at $0, and deducts $510,000 from the value of the Residence, the Plan does not meet the best interest of creditors' test and confirmation must be denied.

First, the Plan does not meet the best interest test because it does not provide for payment to creditors of an additional $40,000 deducted as a result of the Debtor's claimed homestead exemption. As detailed above, the Debtor transferred his entire interest in the Residence to his wife prior to filing bankruptcy for no consideration and while the Debtor was insolvent. Under Oregon law, a homestead exemption only extends to a homestead or its proceeds. ORS 18.395. While Oregon's homestead exemption statute does not define the term "homestead," the term is defined in the property tax provisions as follows: (i) "'Homestead' means the **owner** occupied principal dwelling, either real or personal property, **owned** by the taxpayer and the tax lot upon which it is located." ORS 311.666(2) (emphasis added); and (ii) "As used in this section, 'homestead' means residential property that is **owned** by a person described in subsection (1) of this section and that, but for military service, would be occupied as a residence by the person." ORS 370.286(3) (emphasis added). Importantly, in both instances, some form of ownership is required.

In construing what it means to "own" property for purposes of Oregon's homestead exemption, Courts have held that, at a minimum, it must include some right to possession. *See In re Casserino*, 379 F.3d 1069, 1073 (9th Cir. 2004); *White v. White*, 727 F.2d.

Page 6 of 13   Objection of Solomon Management and Robert Solomon to Confirmation of Plan

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22

884, 886-87 (9th Cir. 1984) (finding that a judgment lien was an insufficient ownership interest because it carried with it no right to possession); *Troutman v. Erlandson*, 44 Or. App. 239, 245 (finding the homestead exemption applied where partnership dissolution decree granted individual an option to purchase property **with the right to possession** prior to option's expiration); *but see Fiet v. O'Dwyer*, Civil No. 85–984LE (D. Or. 1985) (unpublished). Here, the Debtor has not scheduled any legal right to possession of the Residence, including any lease in Schedule G. Rather, the Debtor appears to rely on some purported equitable interest remaining in the Residence without any express pre-petition agreement providing the Debtor with any ownership or possessory right. This is an insufficient ownership interest to allow the Debtor to claim an exemption in the Residence.

Separately, even were the Debtor found to "own" the Residence for purposes of Oregon's homestead exemption, he would nevertheless be barred from claiming the exemption for purposes of the best interest test because the claimed homestead exemption would be disallowed under Section 522(g) as a result of the Debtor's voluntary transfer to his wife. As detailed further below, in a chapter 7 proceeding, the trustee would be able to avoid the transfer of the Residence to the Debtor's spouse as a fraudulent transfer. And when recovered, the Debtor would not be able to claim an exemption in the Residence because the transfer was voluntary. Accordingly, the best interest number must be increased by $40,000 to account for the improper homestead exemption.

Second, the Plan further does not meet the best interest of creditors' test because the liquidation analysis does not account for the value of the Debtor's equity in U.S. Outdoor. As detailed above, in the U.S. Outdoor Bankruptcy Case, U.S. Outdoor obtained convertible exit financing that implicitly valued the Debtor's equity in U.S. Outdoor at $2,421,875. In his liquidation analysis, however, the Debtor has attributed no value to his equity. Because a trustee in chapter 7 would be able to market and sell the Debtor's majority

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

equity in U.S. Outdoor for the benefit of all creditors, the value of this asset must be accounted for in the Plan.

Finally, the Plan also does not meet the best interest of creditor's test because it deducts from the value of the Residence the new lien placed on the Residence by the Debtor's wife. As detailed above, the Debtor transferred the Residence to his wife after receiving Solomon Management's and Mr. Solomon's demand letters on the guarantees and after being served with the summons and complaint in the Guarantee Lawsuits. Further, the Debtor transferred the Residence to his wife for no consideration, while he was insolvent, and at the urging of Finance of America because of the Debtor's significant creditor exposure. Accordingly, the transfer of the Residence is avoidable as both an intentional and constructive fraudulent conveyance under Section 548 of the Bankruptcy Code.

Because the transfer of the Residence to the Debtor's wife is avoidable, under Section 550(a) of the Bankruptcy Code, the lien granted by the Debtor's spouse to Finance of America as a subsequent transferee is likewise avoidable unless Finance of America falls within Section 550(b)'s safe harbor. Because, however, Finance of America orchestrated the transfer of the Residence from the Debtor to his spouse for the purpose of avoiding the claims of the Debtor's creditors, Finance of America will not be able to avail itself of the safe harbor. For this reason, the Debtor's interest in the Residence for purposes of the liquidation analysis should be increased to at least $400,000, which is half of the scheduled value of the Residence.

**The Plan is not fair and equitable.**

Under Section 1191(b), a debtor may only confirm a plan without the vote of an impaired accepting class if the plan is "fair and equitable" with respect to each impaired class. As relevant here, a plan is "fair and equitable" with respect to an impaired class if (i) it provides that all of the debtor's projected disposable income of the debtor over a 3-year period, or such

Page 8 of 13    Objection of Solomon Management and Robert Solomon to Confirmation of Plan

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22

longer period not to exceed 5 years that the Court may fix, will be applied to make payments under the plan and (ii) the plan provides appropriate remedies, including liquidation of non-exempt assets, to protect claimants in the event payments are not made. 11 U.S.C. §1191(c). For purposes of subchapter V, a debtor's projected disposable income is defined as income received by the debtor and that is not reasonably necessary for (a) the maintenance or support of the debtor or a dependent of the debtor, (b) a domestic support obligation first payable after the petition date, and (c) the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. 11 U.S.C. § 1191(d).

As a preliminary matter, the Debtor's monthly gross income is $5,999.50 against his spouse's income of $6,729.00, a difference of $729.50. Notwithstanding this difference, in his disposable income calculations, the Debtor deducts (i) $404 for voluntary contributions to his wife's retirement plan, (ii) $500 for payments on his wife's debt and credit card payments, and (iii) $300 per month for his wife's savings, for a total of $1,204. As a result, the Debtor is subsidizing his wife's savings and debt payments from his wages in the amount of $474.50 per month. At a minimum, for the Plan to be fair and equitable, the monthly plan payment must increase to at least this amount.

Further, in his projected disposable income calculations, the Debtor also deducts expenses of (i) $788 per month for utilities, including $372 per month for phone, internet, and cable, (iii) $1,610 per month for food, housekeeping, clothing, personal care, and entertainment, including $325 per month of entertainment expenses, (iii) $1,212 per month for transportation costs, including $370 per month for parking. In contrast:

- The IRS National standards for food, housekeeping supplies, apparel and services, personal care products, and miscellaneous is for a household of two is $1,292, $318 per month less than what the Debtor claims.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

- The local utility standards for Clackamas County for a household of two is $582, $207 per month less than what the Debtor claims.
- The IRS Transportation standards operating costs for two car households in the West region is $484 per month, $728 per month less than what the Debtor claims.

In total, the Debtor's monthly expenses exceed the national and local standards by $1,253 per month.

The Debtor also deducts from his projected disposable income $10,650 per year for domestic support obligations for his daughter's child support. Under his divorce decree, however, the Debtor's child support obligations terminate at the later of the date his daughter turns 18 or 21, if she is a "child attending school" and unmarried. The Debtor's daughter was born in May 2003 and graduated high school in May 2021. If the Debtor's daughter is not currently attending school, then the domestic support obligation has ended and should not be deducted from the Debtor's projected disposable income. And, in any event, the deduction should be removed after she completes school, or May 2024 at the latest.

Taking the foregoing together, to be fair and equitable, the Plan's funding must immediately increase to $1,727.50 per month, consisting of the $474.50 by which the Debtor is subsidizing his wife's savings and debt payments and the $1,253 per month by which the Debtor's expenses exceed the national and local standards. Further, the Plan funding must also increase by the amount of his domestic support obligations effective as of the date his daughter either marries or is not in school. Absent these increases, the Plan is not fair and equitable.

Separately, the Plan further may not be confirmed because it does not provide appropriate remedies, including liquidation of non-exempt assets, to protect claimants in the event Plan payments are not made. Rather, the default provisions of the Plan provide that, upon a default, claimants are entitled to pursue such remedies as are available at law or in

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

equity, including moving to reopen the case, moving to convert the case, or moving to compel performance under the Plan. To provide appropriate remedies, upon a default, the Plan should provide for the liquidation of the Residence and U.S. Outdoor by the Subchapter V trustee. Without these protections, the Plan does not meet the requirements of Section 1191(c)(3).

Last, the Plan is not fair and equitable because it is limited to only 3 years. The Debtor has scheduled debts of over $1.5 million. Yet, the Debtor is proposing to pay only $15,147.96 under his Plan while allowing his wife to retain the Residence and the Debtor to retain his equity in U.S. Outdoor. Under these circumstances, a 3-year plan period is not "fair and equitable."

**Confirmation must be denied because the Plan is not proposed in good faith.**

Pursuant to Section 1129(a)(3) of the Bankruptcy Code, made applicable to this proceeding under Section 1191(a) of the Bankruptcy Code, a plan must have been proposed in good faith in order to be confirmed. "Good faith" is not defined in the Bankruptcy Code. "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir. 2002); *In re Madison Hotel Assoc.*, 749 F.2d 410, 425 (7th Cir. 1984) (good faith "is generally interpreted to mean that there exists 'a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'"). Further, good faith "requires a fundamental fairness in dealing with one's creditors." *In re Jorgensen*, 66 B.R. 104, 109 (9th Cir. B.A.P. 1986). In making that determination, courts consider the totality of the circumstances. *Sylmar Plaza, LP*, 314 F.3d at 1074. Where a plan fails to provide a mechanism for recovery of fraudulent transfer claims, courts have found that the plan was not proposed in good faith. *In re Val-Mid Assoc. L.L.C.*, 2013 WL 3049235 (Bankr. D. Ariz 2013); *In re Coram Healthcare Corp.*, 271 B.R. 228, 237 (Bankr. D. Del. 2001). Likewise, a Debtor's attempt to give favorable

Page 11 of 13  Objection of Solomon Management and Robert Solomon to Confirmation of Plan

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22

treatment to an insider has been found not in good faith. *In re Future Energy Corp.*, 83 B.R. 470, 487 (Bankr. S.D. Ohio 1988); *In re Bush Industries, Inc.*, 315 B.R. 292 (Bankr. W.D.N.Y. 2004).

First, the Debtor's Plan is not proposed in good faith because it provides no mechanism for pursuit of fraudulent transfer claims against the Debtor's spouse and Finance of America. As detailed above, the Debtor has viable fraudulent transfer claims against both his spouse and Finance of America. Presumably because prosecuting such claims would expose his spouse to litigation costs and personal liability from Finance of America, the Debtor has opted not to pursue those claims. Because of the value of the Debtor's equity in the Residence, the failure of the Plan to provide for a mechanism for recovery of these amounts constitutes lack of good faith for purposes of Section 1129(a)(3).

Second, the Plan is not proposed in good faith because it allows the claims of the Debtor's spouse, totaling $320,000. Pursuant to Section 502(d) of the Bankruptcy Code, Mrs. Lattimer-Ariniello's failure to deed the Residence back to the Debtor is grounds for denial of her claims. Notwithstanding the clear language of Section 502 and the clear avoidance of the transfer of the Residence, the Debtor scheduled his spouse's claims as undisputed and, accordingly, she did not file proofs of claim in the case. The Debtor's failure to dispute his spouse's claims is further evidence of lack of good faith warranting denial of confirmation.

Finally, the Plan is not proposed in good faith based on the totality of the circumstances detailed herein. As noted, the Plan seeks to protect the Debtor's spouse and her lender from fraudulent transfer liability while allowing the spouse's claims in full, deducts an inappropriate homestead exemption, attributes no value to the Debtor's equity in U.S. Outdoor notwithstanding its recent capital raise, seeks a 3-year plan period, subsidizes the Debtor's spouse's savings and debt payments at the expense of the Debtor's creditors, deducts domestic support obligations after their expiration, and inflates the Debtor's expenses to minimize

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

payments to creditors. Viewed as a whole, the structure of the Plan indicate a lack of good faith such that confirmation should be denied.

## CONCLUSION

For the foregoing reasons, Solomon Management and Mr. Solomon oppose confirmation of the Plan and ask that confirmation be denied and this case converted to a chapter 7 case so that a chapter 7 trustee can liquidate the Debtor's assets for the benefit of creditors. If the Court elects to confirm the Plan, Solomon Management and Mr. Solomon submit that the Plan must be confirmed under Section 1191(b), with discharge only to be entered upon completion of the Plan payments.

DATED this 3rd day of January, 2022.

MILLER NASH LLP

*/s/ Garrett S. Ledgerwood*
Garrett S. Ledgerwood
OSB No. 143701
garrett.ledgerwood@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorney for Creditors Solomon Management, Inc. and Robert D. Solomon, in his capacity as Trustee of the Mervin Solomon GST Trust UW 9-28-2008

Page 13 of 13  Objection of Solomon Management and Robert Solomon to Confirmation of Plan

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22

I hereby certify that I served the foregoing JOINT OBJECTION OF SOLOMON MANAGEMENT, INC. AND ROBERT D. SOLOMON TO CONFIRMATION OF DEBTOR'S SUBCHAPTER V PLAN on:

- NICHOLAS J. HENDERSON    nhenderson@portlaw.com

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.** As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

and, on the same day, I served the foregoing JOINT OBJECTION OF SOLOMON MANAGEMENT, INC. AND ROBERT D. SOLOMON TO CONFIRMATION OF DEBTOR'S SUBCHAPTER V PLAN on the following by First-class mail, postage prepaid:

None.

DATED this 3rd day of January, 2022.

*/s/ Garrett S. Ledgerwood*
Garrett S. Ledgerwood
Oregon State Bar No. 143701
Attorney for Creditors Solomon Management, Inc. and Robert D. Solomon, in his capacity as Trustee of the Mervin Solomon GST Trust UW 9-28-2008

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

4871-3749-8626.3

Case 21-31142-dwh11    Doc 71    Filed 01/04/22