Nicholas J. Henderson, OSB No. 074027
Motschenbacher & Blattner, LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0508 Direct
(503) 417-0528 Facsimile
nhenderson@portlaw.com

*Attorneys for Edward A. Ariniello, Jr.*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>EDWARD A. ARINIELLO, JR.,<br><br>             Debtor-in-Possession. | Bankruptcy Case No. 21-31142-dwh11<br><br>**NOTICE OF SETTLEMENT AND COMPROMISE AND MOTION TO APPROVE SETTLEMENT** |

### NOTICE OF SETTLEMENT AND COMPROMISE

NOTICE IS GIVEN that Edward A. Ariniello, Jr. ("***Debtor***"), requests the Court's approval of a settlement in connection with (1) Joint Objection of Solomon Management, Inc. and Robert D. Solomon to Debtor's Homestead Exemption [ECF No. 69] (the "***Objection to Exemption***"), and (2) the Joint Objection of Solomon Management, Inc. and Robert D. Solomon to Confirmation of Debtor's Subchapter V Plan [ECF No. 71] (the "***Objection to Confirmation***"). Specifically, Debtor requests approval of the Settlement Agreement negotiated and executed by Debtor, his spouse Carrie Ariniello ("***Spouse***"), and creditors Solomon Management, Inc. ("***Solomon Management***") and Robert D. Solomon, in his capacity as Trustee of the Mervin Solomon GST Trust UW 9-29-2008 ("***Solomon***," and together with Solomon Management, the "***Solomon Creditors***"), a copy of which is attached hereto as Exhibit 1 (the "***Settlement Agreement***"). Debtor has requested that the notice requirements of Fed R. Bankr. P. 2002(a)(3) be waived.

NOTICE OF SETTLEMENT AND COMPROMISE AND
MOTION TO APPROVE SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0500

## MOTION TO APPROVE SETTLEMENT

The Debtor, pursuant to FRBP 9019(a) moves the Court for entry of an order approving the Settlement Agreement on the Debtor's homestead, and, in support, the Debtor represents and state as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

2.      The basis for the relief requested in this Motion include § 105 of the Bankruptcy Code and FRBP 2002 and 9019.

### BACKGROUND AND SUMMARY OF THE AGREEMENT

3.      On May 17, 2021, Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.

4.      On June 1, 2019, Debtor filed Missing Documents [ECF No. 19], which included all missing bankruptcy schedules and statement of financial affairs.  In the missing documents, Debtor disclosed transfers of his primary residence to his spouse, but also listed a beneficial interest in half of the residence.  Debtor claimed a homestead exemption for his interest in the residence.

5.      At the First Meeting of Creditors, Debtor testified that his interest in the residence was transferred to his spouse for the purpose of refinancing and obtaining a lower interest rate, because Debtor could not qualify.  According to Debtor, the refinance would enable him and his spouse to obtain a better interest rate, which would improve the household cash flow, enabling Debtor to pay his debts and expenses.

NOTICE OF SETTLEMENT AND COMPROMISE AND
MOTION TO APPROVE SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0500

6.      On August 17, 2021, Debtor filed his Chapter 11 Plan of Reorganization, dated August 17, 2021 [ECF No. 30] (the "*Plan*").  Attached to the Plan is a liquidation analysis, calculating the "best interest number" for purposes of 11 U.S.C. § 1129(a)(7)(A)(ii).  The liquidation analysis contains an asset line-item for Debtor's claimed interest in the residence, as well as the claimed homestead exemption.

7.      On January 3, 2022, the Solomon Creditors filed their Objection to Exemption, and on January 4, 2022, the Solomon Creditors filed their Objection to Confirmation.

8.      The Debtors and Creditor have reached an agreement to resolve the Solomon Creditors' Exemption Objection and the Objection to Confirmation.  The parties' agreement was reduced to writing, and fully executed as of February 9, 2022.

9.      The material terms of the Settlement Agreement are as follows:

- Debtor shall amend the plan to increase the amount of payments by $20,000 total.  This will be accomplished by extending the length of the plan, and by gradually increasing the amount of the plan payments, starting 1.5 years after the Effective Date of the Plan.  Settlement Agreement, § 1.1.2.

- Debtor delegates authority to Amy Mitchell, as Subchapter V Trustee, to investigate and, if she believes it to be appropriate, commence an avoidance action against Spouse and/or Spouse's mortgage company, related to the transfer of legal title of the Heater Rd. house from Debtor and Spouse's name jointly, to Spouse's name only.  Ms. Mitchell will file a report with her findings and proposed course of action within 180 days of the plan confirmation date.  Debtor has the opportunity to avoid litigation by further amending his plan to pay any amounts that Ms. Mitchell believes she can recover, less (1) the amounts Debtor has already accounted for the value of the residence in his liquidation analysis, (2) the extra amounts he is contributing pursuant to the Settlement Agreement, and (3) any recovery that would be prohibited under 11 U.S.C. § 550(d).  Settlement Agreement, § 1.1.3.

- The Debtor shall not object to Claim 04 of Solomon Management, Inc. or Claim 05 of Robert D. Solomon.  Both claims will be allowed as filed.  Settlement Agreement, § 1.1.4.

- The amended plan shall state that Debtor shall not receive a discharge until the plan is completed.  Settlement Agreement, § 1.1.5.

NOTICE OF SETTLEMENT AND COMPROMISE AND
MOTION TO APPROVE SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0500

- Debtor, the Solomon Creditors, and Spouse release each other from any and all claims, subject to different conditions and timing. Settlement Agreement, § 2.

- While Debtor's bankruptcy case is open, the Solomon Creditors shall forebear from any litigation against Debtor, his spouse, or spouse's mortgage creditor. Settlement Agreement, § 1.2.1.

- The Solomon Creditors shall withdraw any objection to confirmation, and would both vote to accept the Plan, as amended. Upon confirmation of the amended plan, the Solomon Creditors shall withdraw the Objection to Exemption. Settlement Agreement, § 1.2.2.

- Spouse shall continue contributing to the household budget, enabling Debtor to make his plan payments as required by the amended plan. Settlement Agreement, § 1.3.1.

- Spouse agrees to toll the statute of limitations for potential claims against her related to the transfer of the residence. Settlement Agreement, § 1.3.2.

## ARGUMENT

10. A bankruptcy court should approve a proposed settlement if the court finds the settlement "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer Ferry, 390 U.S. at 424. See also Martin v. Kane (In re A & C Props.),* 784 F.2d 1377, 1381 (9th Cir. 1986) (a compromise should be approved when it is "fair and equitable").

11. It is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. See *A & C Props.*, 784 F.2d at 1381. Accordingly, a settlement need only "be in the best interests of the estate and 'reasonable, given the particular circumstances of the case.'" *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.),* 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003) (internal citations omitted).

12. To determine whether a compromise is fair and equitable, the Ninth Circuit has held that a bankruptcy court should consider:

NOTICE OF SETTLEMENT AND COMPROMISE AND
MOTION TO APPROVE SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0500

a.   [t]he probability of success in the litigation;

b.   the difficulties, if any, to be encountered in the matter of collection;

c.   the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

d.   the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A & C Props.*, 784 F.2d at 1381 (quoting *Lambert v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir. 1984)).

13.    The Settlement Agreement resolves the Objection to Exemption.  To resolve that specific objection, Debtor agreed to amend his plan to indicate that he will pay an additional $20,000—of half of Debtor's claimed homestead exemption—to the Plan.  To accomplish this, Debtor has agreed to extend the length of the Plan from three to five years, and has agreed to increase the amount of plan payments over time.  Additionally, Debtor agreed to contribute his tax refunds to the plan for the first three years of the Plan.

14.    In the Exemption Objection, the Solomon Creditors allege that Debtor's transfer of his personal residence was a fraudulent transfer, and the homestead exemption should therefore be denied.  Debtor denies the allegation, but understands that the litigation would involve depositions of multiple witnesses, and would also likely require expert testimony.  Debtor believes it is in the best interest of all parties in interest to avoid incurring the extra administrative expense when neither side has a clear probability of success on the merits.

15.    The Settlement Agreement also resolves the Objection to Confirmation.  In his Plan, the Debtor prepared a liquidation analysis that treated the residence as if it is still legally owned by both he and his spouse.  In essence, as if the allegedly fraudulent transfer never occurred.  The Settlement Agreement requires that Debtor also amend his plan to delegate certain authority to Amy

NOTICE OF SETTLEMENT AND COMPROMISE AND
MOTION TO APPROVE SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0500

Mitchell, Subchapter V Trustee. Specifically, Ms. Mitchell would be given the authority to investigate and evaluate whether any additional recovery can be made for creditors, subject to the limitation against double-recovery in 11 U.S.C. § 550(d). Before any adversary proceeding is commenced by the Subchapter V Trustee, she must first file a report setting forth her recommendation regarding whether to pursue avoidance actions against Debtor's spouse or the mortgage company with whom the refinance transaction was obtained. The amended plan would give Debtor the ability to resolve the issue, and avoid litigation altogether, by filing an amended plan to pay additional funds to the Plan.

16.     Debtor believes the amended plan, and the delegation of authority to Ms. Mitchell, is in the best interest of the estate and all parties in interest. The Settlement Agreement and the proposed amended plan would eliminate the need for expensive fraudulent transfer litigation. First, the plan would enable an independent and neutral third-party to evaluate the potential avoidance actions to Debtor's spouse and her mortgage company. Second, the Settlement Agreement and related plan amendments would give Debtor the opportunity to amend his plan again, to cover any shortfall that may exist between the current Plan and the additional amount Ms. Mitchell believes she may recover through an avoidance action, again subject to the double-recovery limitation in 11 U.S.C. § 550(d), after accounting for all of the contributions Debtor is making to the plan by (1) treating the residence as an asset in his liquidation analysis and plan; and (2) making additional contributions to the plan pursuant to the Settlement Agreement.

17.     The Settlement Agreement is the product of consent from Debtor and the Solomon Creditors. The agreement of each allows for a speedy and less expensive resolution of the dispute concerning the Objection to Exemption and the Objection to Confirmation.

NOTICE OF SETTLEMENT AND COMPROMISE AND
MOTION TO APPROVE SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0500

18.     As a result of the foregoing, the Settlement Agreement satisfies the *A & C Properties* factors and should be approved.

WHEREFORE, the Debtors respectfully requested that the Court enter an order, in the form attached hereto as **Exhibit 2**, approving the Settlement Agreement.

DATED this 9th day of February, 2022

MOTSCHENBACHER & BLATTNER LLP

/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB No. 074027
117 SW Taylor Street Suite 300
Portland, OR 97204-3029
(503) 417-0508 Direct
(503) 417-0528 Facsimile
nhenderson@portlaw.com
Attorneys for Plaintiff

NOTICE OF SETTLEMENT AND COMPROMISE AND
MOTION TO APPROVE SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street Suite 300
Portland, OR 97204
(503) 417-0500

**EXHIBIT 1**

**SETTLEMENT AGREEMENT**

# SETTLEMENT AGREEMENT

This Settlement Agreement ("***Agreement***") is entered into by Edward A. Ariniello, Jr. ("***Debtor***"), Carrie Ariniello ("***Spouse***"), Solomon Management, Inc., an Oregon corporation ("***SMI***"), and Robert D. Solomon, in his capacity as Trustee of the Mervin Solomon GST Trust UW 9-29-2008 ("***Trustee***"). In this Agreement, SMI and Trustee are referred to jointly as the "***Solomon Parties***." Additionally, in this Agreement, Debtor, Spouse, SMI and Trustee are each referred to as a "***Party***," and are collectively referred to as the "***Parties***."

## RECITALS

A.      On or about December 12, 2001, the Debtor purchased the real property and improvements located at 29455 SW Heater Rd., Sherwood, Oregon, 97140 (the "***Residence***"). Initially, the Residence was titled exclusively in Debtor's name.

B.      On or about June 1, 2017, Debtor's affiliate, U.S. Outdoor Holding LLC, an Oregon limited liability company ("***USOH***"), and SMI entered into an agreement for the purchase by USOH of certain assets of SMI (the "***Asset Purchase***"). As part of the consideration for the Asset Purchase, USOH signed a promissory note payable to SMI (the "***USOH Note***"). Debtor signed a Carve-Out Guaranty (the "***Note Guaranty***") to conditionally guarantee payment of amounts owing to SMI under the USOH Note.

C.      Also on June 1, 2017, as part of the Asset Purchase, USOH also entered into a commercial lease with Trustee with respect to the real property commonly known as 219 SW Broadway, Portland, Oregon 97205 (the "***Lease***"). Debtor executed a Guaranty to unconditionally guarantee amounts due under the Lease (the "***Lease Guaranty***").

D.      On or about November 20, 2017, Spouse and Debtor obtained a mortgage loan from Finance of America Mortgage LLC ("***FAMLLC***"), to refinance existing mortgage indebtedness and pay other obligations. At that same time, Debtor executed and delivered a Bargain and Sale Deed to convey title to the Residence from his name to himself and Spouse as tenants by the entirety (the "***Initial Transfer***"). The initial principal balance of the 2017 loan from FAMLLC was $424,100.

E.      On October 15, 2018, Debtor and Spouse obtained a second mortgage from OnPoint Credit Union in the initial principal amount of $100,000.

F.      In 2020, Debtor asserts that interest rates dropped and Debtor and Spouse approached FAMLLC to inquire about refinancing the existing mortgage loans encumbering the Residence. Debtor asserts that Spouse was able to qualify for a new loan, but Debtor was not able to qualify for a new loan. Accordingly, on or about November 16, 2020, Spouse executed a note, trust deed, and other related loan documents with FAMLLC, to, Debtor asserts, obtain a loan to pay off the existing indebtedness owed by Spouse and Debtor to FAMLLC and OnPoint Credit Union.

G.      On or about September 4, 2020, USOH filed a Chapter 11 bankruptcy case. On October 19, 2020, as a result of USOH's bankruptcy filing, SMI demanded payment from Debtor

Doc ID: cacb3f21334de721bd08535a0e2335deea2b7f57

Exhibit 1
Page 1 of 12
Case 21-31142-dwh11     Doc 87     Filed 02/09/22

under the Note Guaranty of all amounts due and owing on the Note. On October 19, 2020, Trustee also demanded payment from Debtor for alleged amounts due under the Lease and Lease Guaranty.

H.    On November 4, 2020, SMI filed a complaint to commence litigation against Debtor, to recover amounts due under the USOH Note and Note Guaranty. The lawsuit was entitled *Solomon Management, Inc. vs Edward A. Ariniello*, Clackamas County Circuit Court Case No. 20CV38808 (the "***Asset Purchase Lawsuit***").

I.    Also on November 4, 2020, Trustee filed a complaint to commence litigation against Debtor, to recover amounts due under the Lease and Lease Guaranty. The lawsuit was entitled *Robert D. Solomon vs Ed Ariniello*, Clackamas County Circuit Court Case No. 20CV38815 (the "***Lease Lawsuit***").

J.    On or about November 17, 2020, Debtor executed and delivered to escrow a Statutory Bargain and Sale Deed to transfer his interest in the Residence to Spouse (the "***Second Transfer***"). On November 23, 2020 (the "***Transfer Date***") Spouse closed the new loan with FAMLLC in the amount of $510,400 (the "***New Mortgage***"). With that loan, Debtor asserts that Debtor and Spouse's existing loans with FAMLLC and OnPoint Credit Union—in the amounts of $403,974.95 and $79,201.97, respectively—were fully repaid, including interest, costs and fees. Thereafter, Spouse held exclusive legal title to the Residence.

K.    On May 17, 2021 (the "***Petition Date***"), Debtor filed a voluntary petition for bankruptcy relief under Chapter 11, Subchapter V of the U.S. Bankruptcy Code (the "***Code***"), commencing Bankruptcy Case No. 21-31142-dwh11 (the "***Bankruptcy Case***") in the United States Bankruptcy Court for the District of Oregon (the "***Bankruptcy Court***").

L.    On June 1, 2021, Debtor filed his Schedules and Statement of Financial Affairs [ECF No. 19] (the "***Schedules***"). Debtor's Schedules disclosed the Second Transfer, as well as an equitable interest in the Residence and a claimed homestead exemption in the Residence.

M.    The Solomon Parties have alleged that the Initial Transfer, the Second Transfer, and the New Mortgage were fraudulent transfers, avoidable under Section 548 of the Code, and under Oregon's Uniform Fraudulent Transfer Act, ORS 95.200 to 95.310 (the "***OUFTA***"). The Solomon Parties have also objected to the Debtor's claimed homestead exemption [ECF No. 69] (the "***Homestead Exemption Objection***").

N.    Debtor and Spouse deny that the Initial Transfer, Second Transfer, and New Mortgage were fraudulent, and assert that the refinance in 2020 lowered the interest rate for the couple's mortgage debt, lowering their monthly mortgage debt service payments, which freed up cash flow for payments to creditors.

O.    Debtor has evaluated his duties to pursue avoidance of the Initial Transfer, Second Transfer and New Mortgage under applicable provisions of Chapter 5 of the Code and OUFTA. Debtor estimates that the value of the Residence, on the Petition Date, was approximately $800,000, as listed in the Schedules. The day before the Transfer Date, Debtor and Spouse's outstanding mortgage debt totaled $483,176.92. If the Residence were sold,

{00498576:2}

Doc ID: cacb3f21334de721bd08535a0e2335deea2b7f57

Exhibit 1
Page 2 of 12

Case 21-31142-dwh11    Doc 87    Filed 02/09/22

Debtor and Spouse estimate that costs of sale would be approximately $64,000, including realtor fees, closing costs and customary pro-rations for property taxes. As a result, after accounting for existing mortgage debt and cost of sale reductions, Debtor contends that the amount of Debtor and Spouse's equity in the Residence just prior to the Transfer Date equaled approximately $252,823.08. As a result, Debtor estimates that, at a maximum, his share of equity transferred to Spouse on the Transfer Date (the "***Section 550(d) Recovery Limit***") was $126,411.54, which is half of the total amount Debtor contends was Debtor's and Spouse's share of equity in the Residence just prior to the Second Transfer.

P.        On August 17, 2021, Debtor filed his Plan of Reorganization (the "***Plan***") with the Bankruptcy Court. The Debtor contends that the Plan proposes to pay claims as if the transfer of the Residence to Spouse has already been avoided using the avoidance powers available under Chapter 5 of the Code. Specifically, the Liquidation Analysis attached as <u>Exhibit 1</u> to the Plan already includes equity in the Residence in the amount of $113,000 (the "***Contributed Equity***"). To fund the Plan in the amount of the Contributed Equity, Debtor and Spouse have agreed that Spouse will continue to use her income to pay for the couple's joint household expenses as set forth in Schedules I & J. Debtor contends that Spouse's contribution to the household budget frees up Debtor's cash flow, enabling him to make the Plan Payments, which Debtor would not be able to make without Spouse's contribution.

Q.        Additionally, Debtor has proposed to contribute an additional $20,000 (the "***Homestead Contribution***") to the Plan, accounting for half of his asserted homestead exemption, to settle the Homestead Exemption Objection, and to contribute additional value to eliminate the difference between the Section 550(d) Recovery Limit and the Contributed Equity.

R.        Debtor answered the complaints in the Asset Purchase Lawsuit and the Lease Lawsuit, disputing the Solomon Parties' respective allegations, and asserting counterclaims against the Solomon Parties. Debtor and Spouse also dispute the Solomon Parties' contentions regarding Debtor's bankruptcy case, the Initial Transfer, the Second Transfer and the New Mortgage. The Solomon Parties likewise dispute the allegations and counterclaims made by Debtor in the lawsuits, and also dispute Debtor's allegations regarding potential objections to the claims made by the Solomon Parties in USOH, the Bankruptcy Case, and the avoidability of the Initial Transfer, the Second Transfer, and the New Mortgage. The Parties desire to settle and compromise their dispute to avoid the uncertainty and cost inherent in litigation. The Parties have agreed to settle their dispute on the terms and conditions of this Agreement.

THEREFORE, for good and valuable consideration, the adequacy of which the Parties acknowledge, the Parties, intending to be legally bound, agree as follows:

<u>**AGREEMENT**</u>

**1.  CONSIDERATION**

1.1.        <u>Debtor's Consideration</u>. As consideration for this Agreement, Debtor agrees to the following:

1.1.1.        <u>Modified Plan</u>. The Debtor shall file and seek confirmation of a modified

Page 3 of 10 – SETTLEMENT AGREEMENT
{00498576:2}

Plan consistent with the terms provided in this Agreement (the "***Modified Plan***"), in form and substance acceptable to the Solomon Parties in their reasonable discretion.

       1.1.2.   <u>Increase in Payments to Plan</u>. The Modified Plan shall increase in the total payments the Debtor shall be required to make to the Plan. Specifically, Debtor shall extend his Plan from a 3-year plan to a 5-year plan, and shall propose to contribute $35,147.96, instead of the currently proposed $15,147.96.

       1.1.3.   <u>Delegation of Ability to Pursue Certain Chapter 5 Claims</u>. The Modified Plan shall provide that Amy Mitchell, Subchapter V Trustee or any successor trustee appointed in the Bankruptcy Case (the "***Bankruptcy Trustee***"), shall have the authority, on behalf and as representative of the Debtor's bankruptcy estate to investigate, evaluate, pursue and/or settle an avoidance and recovery actions relating to the Second Transfer and the New Mortgage, whether against Spouse or FAMLLC, under the applicable provisions of Chapter 5 of the Code and OUFTA. Without limiting the foregoing, the Modified Plan shall provide as follows:

       1.1.3.1.   <u>Limitation on Actions</u>. The Bankruptcy Trustee's authority to pursue any avoidance claim shall be limited to: (i) avoiding the Second Transfer and the lien granted to FAMLLC in relation to the New Mortgage (the "***Potential Avoidance Actions***"), and (ii) subject to the limitation in 11 U.S.C. § 550(d), recovering the difference—if any—between (a) the value of the Debtor's equity in the Residence if the Second Transfer and/or the New Mortgage are avoided and (b) the sum of the Contributed Equity and the Homestead Contribution.

       1.1.3.2.   <u>Timing</u>. Prior to filing any avoidance action related to the Second Transfer or the New Mortgage, the Bankruptcy Trustee shall file a report (the "***Report***") with her findings, her proposed course of action, and the estimated amount of recovery. If the Bankruptcy Trustee determines that additional recovery is unlikely, the Bankruptcy Trustee shall indicate that in the Report. The Report shall be filed no later than 180 days after confirmation of the Modified Plan.

       1.1.3.3.   <u>Pre-Filing Resolution</u>. If the Report indicates that the Bankruptcy Trustee believes that additional amounts are likely to be recovered through an avoidance and recovery action, after accounting for the limitations set forth in Section 1.1.3.1. above, the Debtor may resolve the matter and obviate the filing of an avoidance action by the Bankruptcy Trustee by amending the Modified Plan to pay to creditors the estimated recovery described in the Report (the "***Pre-Avoidance Amended Plan***"). To elect this pre-filing resolution, Debtor must (i) file the Pre-Avoidance Amended Plan within 30 days of the date the Report is filed and (ii) obtain confirmation of the Pre-Avoidance Amended Plan within 90 days of the date the Report is filed. If the Pre-Avoidance Amended Plan is both timely filed and confirmed as provided in this paragraph, upon confirmation of the Pre-Avoidance Amended Plan the delegation to the Bankruptcy Trustee shall be deemed terminated. If the Pre-Avoidance Amended Plan is not timely filed or timely confirmed, following the earlier of such date, the Bankruptcy Trustee shall commence on behalf of the Debtor's bankruptcy estate any Potential Avoidance Actions recommended in the Report. The Modified Plan shall provide for the payment of the Bankruptcy Trustee's fees and costs and fees and costs of the Bankruptcy Trustee's counsel in connection with the Report and with any avoidance actions authorized under

Doc ID: cacb3f21334de721bd08535a0e2335deea2b7f57

the Modified Plan.

1.1.3.4. <u>Post-Filing Resolution</u>. In the event the Bankruptcy Trustee avoids the Second Transfer and/or the New Mortgage lien to FAMLLC, Debtor must pay to creditors under the Modified Plan the value of any transfers avoided by the Bankruptcy Trustee that is not already accounted for in the liquidation analysis. An amended plan providing for such increased payment (the "***Post-Avoidance Amended Plan***") must (i) be filed by the Debtor within 60 days of avoidance by the Bankruptcy Trustee and (ii) confirmed by the Bankruptcy Court within 120 days of avoidance. If the Post-Avoidance Amended Plan is not timely filed or confirmed within such time frame, the Bankruptcy Case shall be converted to a case under chapter 7 of the Bankruptcy Code.

1.1.4. <u>No Objection to Claims by Solomon Parties</u>. Debtor shall forego filing objections to the Solomon Parties' claims, and the Modified Plan shall provide that such claims shall be allowed as filed.

1.1.5. <u>Delay of Discharge</u>. The Modified Plan shall provide that entry of an order of discharge shall not be entered in the Bankruptcy Case until Debtor has completed all payments under the Modified Plan.

1.1.6. <u>Release</u>. As additional consideration, Debtor agrees to the Release described in Section 2 below.

1.2. <u>Solomon Parties' Consideration</u>. As consideration for this Agreement, the Solomon Parties agree to the following:

1.2.1. <u>Forbearance of Litigation</u>. The Solomon Parties, and each of them, agree to forebear from any litigation against Debtor, Spouse, and FAMLLC while the Modified Plan is being performed and the Bankruptcy Case is open.

1.2.2. <u>Withdrawal of Objection to Plan</u>. Once the Modified Plan has been filed that is in form and substance consistent with the terms of this Agreement and acceptable to the Solomon Parties in their reasonable discretion, the Solomon Parties, and each of them, agree to (i) withdraw their objections to confirmation of the Debtor's Plan, and (ii) support confirmation of the Modified Plan, including submitting ballots accepting the Modified Plan. Upon the order confirming the Modified Plan becoming a final, non-appealable order, the Solomon Parties agree to withdraw the Homestead Exemption Objection.

1.2.3. <u>Release</u>. The Solomon Parties, and each of them, agree to the Release described in Section 2 below.

1.3. <u>Spouse's Consideration</u>. As consideration for this Agreement, including the forbearance by the Solomon Parties, Spouse agrees as follows:

1.3.1. <u>Contribution to Plan</u>. Spouse shall continue to contribute her personal income to the household income, as described in Debtor's Schedules I & J, to enable Debtor to make the payments required under the Modified Plan.

Doc ID: cacb3f21334de721bd08535a0e2335deea2b7f57

Exhibit 1
Page 5 of 12
Case 21-31142-dwh11    Doc 87    Filed 02/09/22

1.3.2.     Tolling Agreement.  Spouse agrees to toll any applicable statute of limitations for claims by the Solomon Parties related to the Initial Transfer and the Second Transfer.  This tolling agreement does not extend or renew any statute of limitations that already passed, wholly or partially.  This tolling agreement shall terminate upon the earlier of either: (a) resolution of the Potential Avoidance Actions, as described in Sections 1.1.2.4 or 1.1.2.5 above, or (b) upon 60 days after the dismissal of the Bankruptcy Case after default in the Modified Plan and failure to cure within the timeframe allowed in the Modified Plan. For purposes of this paragraph 1.3.2, "resolution of the Potential Avoidance Actions" shall mean the earlier of (i) entry of a final, non-appealable judgment on a complaint related to the Potential Avoidance Actions, or (2) the Bankruptcy Trustee indicating in the Report that she does not believe pursuit of the Potential Avoidance Actions will result in an increased recovery to the estate than is already provided by the Modified Plan.

1.3.3.     Release.  Spouse agrees to the Release described in Section 2 below.

## 2.  RELEASE.

2.1.     Debtor and Spouse Releases.  Subject to the provisions of Sections 2.3 through 2.6 below, Debtor, his bankruptcy estate, and his successors, assigns, affiliates, agents, attorneys, accountants, insurers, and title insurers (collectively, the "***Debtor Releasors***"), and Spouse and her successors, assigns, affiliates, agents, attorneys, accountants, insurers, and title insurers (collectively, the "***Spouse Releasors***") each hereby respectively irrevocably release and discharge the Solomon Parties, and each of their successors, assigns, affiliates, partners, officers, directors, agents, privies, employees, managers, members, attorneys, insurers, and title insurers (collectively, the "***Solomon Released Parties***") from and against any liability, damages and/or claims (including claims for recovery of attorneys' fees and costs), cause or right of action, liability, or obligation of any kind, type, or nature, whether presently known or unknown, whether accrued or unaccrued, that exist as of the Effective Date, that the Debtor Releasors or Spouse Releasors may have against any of the Solomon Released Parties, including without limitation claims, whether or not previously asserted, arising out of: the Asset Purchase, the Note, the Note Guaranty, the Lease, the Lease Guaranty, the Asset Purchase Lawsuit, the Lease Lawsuit, including all counterclaims asserted or that may have been asserted therein.

2.2.     Solomon Parties Releases.  Subject to the provisions of Section 2.3 and 2.4, the Solomon Parties, and each of their successors, assigns, affiliates, agents, attorneys, accountants, insurers, and title insurers (collectively, the "***Solomon Releasors***") hereby irrevocably release and discharge (1) Debtor, his bankruptcy estate, and each of their successors, assigns, affiliates, partners, officers, directors, agents, privies, employees, managers, members, attorneys, insurers, and title insurers (collectively, the "***Debtor Released Parties***") and (2) Spouse, and her successors, assigns, affiliates, partners, officers, directors, agents, privies, employees, managers, members, attorneys, insurers, and title insurers (collectively, the "***Spouse Released Parties***") from and against any liability, damages and/or claims (including claims for recovery of attorneys' fees and costs), cause or right of action, liability, or obligation of any kind, type, or nature, whether presently known or unknown, whether accrued or unaccrued, that exist  as of the Effective Date, that any of the Solomon Releasors may have against any of the Debtor Released Parties or Spouse Released Parties, including without limitation claims, whether or not

{00498576:2}

Doc ID: cacb3f21334de721bd08535a0e2335deea2b7f57
Exhibit 1
Page 6 of 12
Case 21-31142-dwh11     Doc 87     Filed 02/09/22

previously asserted, arising out of the Asset Purchase, the Note, the Note Guaranty, the Lease, the Lease Guaranty, the Asset Purchase Lawsuit, the Lease Lawsuit, the Transfer, and the New Mortgage.

2.3.    Effectiveness of Releases.  Notwithstanding anything to the contrary herein, the effectiveness of the foregoing releases is subject to satisfaction of the following conditions:

2.3.1.    Debtor Release in Favor of Solomon Released Parties.  Debtor Releasors' release in favor of the Solomon Released Parties shall be effective upon entry of an order from the Bankruptcy Court approving this Agreement, as described in Section 3.1 below.

2.3.2.    Solomon Parties' Release in Favor of Debtor.  The Solomon Releasors' release in favor of Debtor Released Parties shall not be effective until Debtor receives a discharge in the Bankruptcy Case.

2.3.3.    Solomon Parties Release in Favor of Spouse.  The Solomon Releasors' release in favor of Spouse is conditional, and shall be effective only upon the earlier of: (1) Debtor's completion of his Plan, or (2) resolution of the Potential Avoidance Actions.  For purposes of this paragraph 2.3.3., "resolution of the Potential Avoidance Actions" shall mean either (1) entry of a final, non-appealable judgment on a complaint related to each of the Potential Avoidance Actions, (2) the Bankruptcy Trustee indicating in the Report that she does not believe pursuit of the Potential Avoidance Actions will result in an increased recovery to the estate than is already provided by the Modified Plan, (3) Debtors' completion of the Pre-Avoidance Amended Plan, if any, or (4) Debtor's completion of the Post-Avoidance Amended Plan, if any.  Additionally, the Solomon Releasors' release in favor of Spouse shall not affect the Bankruptcy Trustee's ability to investigate and commence an avoidance action against Spouse or FAMLLC.

2.3.4.    Spouse Release in Favor or Solomon Released Parties.  The Spouse Releasors' release in favor of the Solomon Released Parties is also conditional, and shall not become effective until the Solomon Releasors' release in favor of the Spouse Released Parties becomes effective.

2.4.    Acknowledgement.  The Parties acknowledge that they may hereafter discover facts different from or in addition to those they now know or believe to be true with respect to the claims, demands, causes of action, obligations, damages and liabilities of any nature whatsoever that are the subject of the releases set forth in this Agreement, and they expressly agree to assume the risk of possible discovery of additional or different facts and agree that this Agreement shall be and remain effective in all respects regardless of such additional or different facts, except as expressly set forth herein. Notwithstanding the above, the releases provided in this Agreement shall not serve to release any Party of its obligations under this Agreement and shall not serve to waive any claims for violations of this Agreement.

2.5.    Representations and Warranties.  The Parties warrant and represent that they have not transferred, assigned, or otherwise conveyed, in whole or in part, any claims, rights, or causes of action, asserted or unasserted, which they might have or claim against any other Party, or the Parties' successors, assigns, affiliates, partners, officers, directors, agents, privies,

Doc ID: cacb3f21334de721bd08535a0e2335deea2b7f57

Exhibit 1
Page 7 of 12
Case 21-31142-dwh11    Doc 87    Filed 02/09/22

employees, managers, title insurers, insurers, attorneys, or accountants, which arise from or which relate in any way to: the Asset Purchase, the Note, the Lease, the Note Guaranty, the Lease Guaranty, the Asset Purchase Lawsuit, the Lease Lawsuit, the Transfer, or the New Mortgage.

2.6.    Limited Third-Party Beneficiaries.  FAMLLC is expressly made a third-party beneficiary to the Solomon Releasors' release in favor of the Spouse Released Parties with respect to the New Mortgage or the Second Transfer.  Once such release becomes effective in favor of the Spouse Released Parties, FAMLLC shall also be released from any and all claims that may be held by the Solomon Releasors arising out of or related to the New Mortgage or the Second Transfer, to the same extent and with the same scope that Spouse Released Parties are released as described in Section 2.2 above.  With the exception of FAMLLC, Debtor Released Parties, Spouse Released Parties, and the Solomon Released Parties, this Agreement and the releases herein are made for the sole protection and benefit of the Parties hereto and no other person or entity shall have any right of action hereon or be a third-party beneficiary hereof.

## 3.  MISCELLANEOUS.

3.1.    Effectiveness.  The terms and conditions of this Agreement are subject to approval by the Bankruptcy Court, and shall not become effective until entry of an order approving the compromise described in this Agreement pursuant to Fed. R. Bankr. P. 9019.

3.2.    Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of, and shall be enforceable by, the Parties (as well as their successors and assigns).

3.3.    Construction of Agreement.  Each party and counsel for each party has had the opportunity to review, revise and contribute to the Agreement and, thus, each party agrees that the Agreement should not be interpreted for or against either party.  The terms of this Agreement are contractual and not mere recitals.  The singular includes the plural and the plural includes the singular.

3.4.    Costs.  Notwithstanding any provision in this Agreement, each Party shall be responsible for each Party's own expenses, including attorney fees and costs.

3.5.    Complete Agreement; Written Amendments. This Agreement is the complete and final agreement among the Parties with respect to the subject matter of this Agreement.  The Agreement supersedes and replaces all other prior oral and written agreements, if any, relating to the subject matter of this Agreement.  This Agreement may be amended, supplemented or modified only by a writing signed by all the Parties.

3.6.    Governing Law and Jurisdiction.  Except to the extent the Bankruptcy Code and Bankruptcy Rules require otherwise, this Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of Oregon (without regard to the principles relating to conflicts of law).  The Bankruptcy Court shall retain sole and exclusive jurisdiction over the interpretation and enforcement of this Agreement.

3.7.    Counterparts; Signature.  This Agreement may be executed in any number of

counterparts, each of which shall be deemed to be an original as against any Party whose signature appears thereon and all of which shall together constitute one and the same instrument. Subject to Section 3.1, this Agreement shall become binding when one or more counterparts hereof, individually, or taken together, shall bear the signatures of all the Parties reflected hereon as the signatories. Facsimile and/or so-called "PDF" signatures will be deemed acceptable as original signatures. All counterparts shall be delivered to counsel for Debtor.

      3.8.   <u>Further Assurances</u>.  Each party agrees to execute and deliver such other documents and to do and perform such other acts and things as any other party may reasonably request to carry out the intent and accomplish the purposes of this Agreement.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**
**SIGNATURES TO APPEAR ON FOLLOWING PAGE**

Page 9 of 10  – SETTLEMENT AGREEMENT
{00498576:2}

Doc ID: cacb3f21334de721bd08535a0e2335deea2b7f57
Exhibit 1
Page 9 of 12

Case 21-31142-dwh11    Doc 87    Filed 02/09/22

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth on the signature pages following.

"DEBTOR"

*Edward Ariniello*

_____
Edward A. Ariniello, Jr.
Date: __02 / 09 / 2022_____

"SPOUSE"

_____
Carrie Ariniello
Date: _____

"SMI"

By: _____
Name:  Robert D. Solomon
Title:  President
Date: _____

"TRUSTEE"

_____
Robert D. Solomon, in his capacity as Trustee of
the Mervin Solomon GST Trust UW 9-29-2008
Date: _____

DocuSign Envelope ID: 620519CE-CE71-47A7-B61C-6A3D73A67FBC

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth on the signature pages following.


"DEBTOR"

_____
Edward A. Ariniello, Jr.
Date: _____

"SPOUSE"

DocuSigned by:

*Carrie Ariniello*
C15C5806EBEE44A
Carrie Ariniello
Date: 2/9/2022 _____

"SMI"

By: _____
Name:  Robert D. Solomon
Title:  President
Date: _____

"TRUSTEE"

_____
Robert D. Solomon, in his capacity as Trustee of
the Mervin Solomon GST Trust UW 9-29-2008
Date: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth on the signature pages following.


"DEBTOR"

_____
Edward A. Ariniello, Jr.
Date: _____

"SPOUSE"

_____
Carrie Ariniello
Date: _____

"SMI"

By: *Robert D. Solomon*
Name:  Robert D. Solomon
Title:  President
Date: 02/09/2022

"TRUSTEE"

*Robert D. Solomon*
Robert D. Solomon, in his capacity as Trustee of the Mervin Solomon GST Trust UW 9-29-2008
Date: 02/09/2022

**EXHIBIT 2**

**PROPOSED ORDER**

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF OREGON

| | |
|---|---|
| In re: | Bankruptcy Case No.: 21-31142-dwh11 |
| EDWARD A. ARINIELLO, JR., | |
| Debtor-in-Possession. | ORDER RE: DEBTOR'S MOTION TO APPROVE COMPROMISE |

Based on Debtor's Notice of Settlement and Compromise and Motion to Approve Settlement

(Dkt. No. ___) (the "***Motion***"), and the Court being otherwise fully advised, it is

ORDERED that the Motion is granted and the Settlement Agreement attached hereto as

**Exhibit A** is approved.

###

Order Presented by:

Motschenbacher & Blattner LLP

/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB No. 074027
Telephone: 503-417-0508
E-mail: nhenderson@portlaw.com
*Attorneys for Debtor*

**PARTIES TO SERVE**:

**CM/ECF:** All participants.

**First-Class Mail**: None.

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

ORDER GRANTING DEBTORS' MOTION TO APPROVE
SETTLEMENT

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a true and correct copy of the foregoing NOTICE OF SETTLEMENT AND COMPROMISE AND MOTION TO APPROVE SETTLEMENT was provided to the following parties through the Court's Case Management/Electronic Case File system:

- STEPHEN P ARNOT    steve.arnot@usdoj.gov
- NICHOLAS J HENDERSON    nhenderson@portlaw.com, tcoble@portlaw.com; tsexton@portlaw.com; hendersonnr86571@notify.bestcase.com
- TROY SEXTON    tsexton@portlaw.com, nhenderson@portlaw.com, troy-sexton-4772@ecf.pacerpro.com, tcoble@portlaw.com, courtnotices@portlaw.com
- US Trustee, Portland    USTPRegion18.PL.ECF@usdoj.gov


I further certify that on the date set forth below, a true and correct copy of the above-described document was sent via first class mail, postage prepaid, to the parties listed on the attached mailing matrix.

DATED: February 8, 2022.

MOTSCHENBACHER & BLATTNER, LLP

/s/Nicholas J. Henderson
Nicholas J. Henderson, OSB No. 074027
Attorneys for Debtor

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com